VERHOFF, Exr.

v.

OHIO STATE UNIVERSITY MEDICAL CENTER.

Court of Claims of Ohio.

No. 2002–08823.

Decided Sept. 10, 2003.

Fred Wendel III, for plaintiff.

Jim Petro, Attorney General, and Karl W. Schedler, Assistant Attorney General, for defendant.

Michael P. Murphy, for Steve Hoffman, M.D.

Kristen Connelly, for Larry Martin, M.D.

---

J. WARREN BETTIS, Judge.

{¶ 1} An evidentiary hearing was conducted in this matter to determine whether Stephen P. Hoffman, M.D., and Larry C. Martin, M.D., are entitled to civil immunity pursuant to R.C. 2743.02(F) and 9.86. At the outset of the proceedings, a stipulation was filed with regard to Dr. Martin. Thus, the hearing proceeded on the issue of immunity only as it pertains to Dr. Hoffman.

{¶ 2} At all times relevant to this action, Dr. Hoffman was employed by the Ohio State University ("OSU") as an assistant professor of clinical medicine in the Division of Pulmonary and Critical Care Medicine. In addition, Dr. Hoffman was employed by the Department of Medicine Foundation, Inc. ("DMF"), a private-practice corporation operating within the Department of Internal Medicine.

■ {¶ 3} There is no assertion that Dr. Hoffman acted with malice, in bad faith, or in a wanton or reckless manner in his care and treatment of plaintiff's decedent, Richard Verhoff. Therefore, the issue before the court is whether this physician was acting within the scope of his state employment with OSU when the alleged injury occurred.

{¶ 4} R.C. 2743.02(F) states:

{¶ 5} "A civil action against an officer or employee, as defined in section 109.36 of the Revised Code, that alleges that the officer's or employee's conduct was manifestly outside the scope of his employment or official responsibilities, or that the officer or employee acted with malicious purpose, in bad faith, or in a wanton or reckless manner shall first be filed against the state in the court of claims, which has exclusive, original jurisdiction to determine, initially, whether the officer or employee is entitled to personal immunity under section 9.86 of the Revised Code and whether the courts of common pleas have jurisdiction over the civil action."

{¶ 6} R.C. 9.86 states:

{¶ 7} "[N]o officer or employee [of the state] shall be liable in any civil action that arises under the law of this state for damage or injury caused in the performance of his duties, unless the officer's or employee's actions were manifestly outside the scope of his employment or official responsibilities or unless the officer or employee acted with malicious purpose, in bad faith, or in a wanton or reckless manner."

■ {¶ 8} The determination of whether a physician is entitled to personal immunity is a question of law. *Nease v. Med. College Hosp.* (1992), 64 Ohio St.3d 396, 596 N.E.2d 432, citing *Conley v. Shearer* (1992), 64 Ohio St.3d 284, 595 N.E.2d 862. However, the question of whether the physician acted manifestly outside the scope of his state employment is one of fact. *Lowry v. Ohio State Hwy. Patrol* (Feb. 27, 1997), Franklin App. No. 96API07–835, 1997 WL 84656; *Smith v. Univ. of Cincinnati* (Nov. 29, 2001), Franklin App. No. 01AP–404, 2001 WL 1512098.

{¶ 9} There is no bright-line rule for determining whether a physician acted within the scope of state employment, but certain cases provide some guidance. For example, in *Ferguson v. Ohio State Univ. Med. Ctr.* (June 22, 1999), Franklin App. No. 98AP–863, 1999 WL 410247, the Tenth District Court of Appeals set forth 15 factors it routinely considered in determining whether a physician acted outside the scope of his state employment. Subsequently, in *Wayman v. Univ. of Cincinnati Med. Ctr.* (June 22, 2000), Franklin App. No. 99AP–1055, 2000 WL 798797, the court emphasized that the *Ferguson* factors could be viewed in terms of two essential considerations: (1) whether the patient was the physician's

private patient or a patient of the university medical facility; and (2) the relative financial gain for the university as compared to that of the physician. More recently, in *Barkan v. Ohio State Univ.*, Franklin App. No. 02AP–436, 2003-Ohio-985, 2003 WL 754349, the court stated that "the key factor" is whether or not the patient was essentially the doctor's private patient.

{¶ 10} In the instant case, Dr. Hoffman treated Verhoff, as the attending physician on duty in the Medical Intensive Care Unit ("MICU"), when Verhoff arrived at OSU Medical Center. Dr. Hoffman testified that he had not previously treated Verhoff and that, although patients came to the MICU by various means, he did not recall Verhoff's being referred to him by any other physician. Dr. Hoffman stated that his role in the MICU was to teach and supervise medical students, residents, and interns. He likened them to apprentices, and noted that the students actively participated in all aspects of patient treatment and that the attending physician reviewed and critiqued their work, but he was ultimately responsible for all final decisions. Dr. Hoffman stated that, in his opinion, the roles of professor and attending physician were virtually indistinguishable.

{¶ 11} Verhoff was transferred to OSU from St. Ritas Hospital in Lima, Ohio. He remained in the MICU from the day of his arrival on August 18, 2001, to the day of his death on September 29, 2001. In the complaint, plaintiff alleges that defendant's negligent care and treatment caused Verhoff "to suffer intra-abdominal damages and bleeding resulting in the development of sepsis and his wrongful death." Verhoff was billed for medical services by DMF. Dr. Hoffman's duties at OSU included the preparation of the billing cards that are processed by DMF to generate individual patient bills.

{¶ 12} As for his personal compensation for services, Dr. Hoffman testified that he received payment from both OSU and DMF. His employment agreement details the contributions of both entities; DMF provides the greater percentage of Dr. Hoffman's salary and also provides medical malpractice insurance. He described DMF as a corporation established to facilitate the operation of various divisions within the Department of Internal Medicine. However, according to Dr. Hoffman, his assignment to the MICU rotation was not made by DMF, but rather, was made by the Director of the Pulmonary and Critical Care Department.

{¶ 13} In support of the claim of immunity, counsel for Dr. Hoffman relied upon the decision in *Barkan,* supra. That case involved two emergency room physicians who were also partners and employees of Emergency Care Associates, Inc. ("ECAI") at OSU. The court of appeals reversed this court's judgment finding that the physicians in question acted outside the scope of their state employment. In so doing, the court examined its decisions in numerous cases and held: "In conclusion, this case is analogous to *Ferguson, Scarberry,* and

*Kaiser.*[1] In each of those cases, emergency department attending physicians were found immune when they were treating emergency department patients. While we can foresee a case where an emergency department attending physician might treat a patient as a private patient, this is not such a case. The evidence presented here demonstrates that, although Barkan was billed by the doctors' private practice plan and ultimately discharged by Dr. Gorgas, he was not treated by the doctors as a private patient. Barkan was not referred to the doctors and all treatment occurred at the OSUMC emergency department. Barkan was first seen by a resident who examined him and developed a diagnosis and treatment plan. The doctors treated Barkan as attending physicians in their supervisory roles over a resident and, therefore, were acting within the scope of their employment with the state." (Footnote added.) *Barkan* at 12.

{¶ 14} Applying the *Barkan* analysis to the facts of the instant case, the court is persuaded for the following reasons that Dr. Hoffman was acting within the scope of his university employment when rendering the care and treatment in question.

{¶ 15} Here, as in *Barkan,* Dr. Hoffman's involvement with Verhoff was "inextricably tied to [his] supervisory role," and there is no evidence that any treatment he provided was inconsistent with that role. Further, as in *Barkan* (citing the *Scarberry* decision), even though Dr. Hoffman was employed by a private-practice corporation that paid the majority of his salary, Dr. Hoffman had never seen or treated Verhoff before seeing him in the MICU, and Verhoff was not specifically referred to him.

{¶ 16} Defendant argues that the majority of cases where immunity is found involve emergency-room physicians. Both plaintiff's and defendant's arguments also rely heavily on the fact that in this case the private-practice corporation billed the patient, that Dr. Hoffman himself provided the paperwork needed to generate the bill, and that the private practice group paid Dr. Hoffman's malpractice insurance. Nevertheless, the court finds that the totality of the evidence makes this case more analogous to the emergency-room cases than those involving other physician specialty groups. Even defendant conceded that, as with emergency-room physicians, intensive-care-unit physicians do not market their services or otherwise attempt to attract patients; likewise, patients do not "choose" to go to either an emergency room or intensive care unit. Additionally, the court stated in *Barkan* that "[w]hile billing may be a relevant factor in determining whether the doctor is acting within the scope of employment, it is

---

**1.** Citations for these cases are as follows: *Kaiser v. Ohio State Univ.,* Franklin App. No. 02AP–316, 2002-Ohio-6030, 2002 WL 31466409; *Ferguson v. Ohio State Univ. Med. Ctr.* (June 22, 1999), Franklin App. No. 98AP–863, 1999 WL 410247; *Scarberry v. Ohio State Univ.* (Dec. 3, 1998), Franklin App. No. 98AP–143, 1998 WL 831578.

not the determinative factor." *Barkan* at 10. With respect to the malpractice insurance, while the private-practice corporation may have been responsible for payment of that cost, the court does not find that to be contrary to the facts set forth in the relevant case law.

{¶ 17} In sum, this court finds that the instant case is also analogous to *Ferguson, Scarberry,* and *Kaiser* and, thus, that the decision in *Barkan* is controlling. The court concludes that Dr. Hoffman treated Verhoff only in his capacity as a faculty physician and that Verhoff was at all times a patient of the university. Accordingly, Dr. Hoffman is entitled to civil immunity pursuant to R.C. 2743.02(F) and 9.86.

{¶ 18} In light of this determination, the stipulation filed on behalf of Dr. Martin is not approved. At the status conference currently scheduled for *September 11, 2003, at 10:00 a.m.*, the parties shall be afforded the opportunity to speak to this issue.

{¶ 19} The court held an evidentiary hearing to determine civil immunity pursuant to R.C. 2743.02(F) and 9.86. Upon hearing all of the evidence and for the reasons set forth in the decision filed concurrently herewith, the court finds that Stephen Hoffman, M.D., is entitled to civil immunity pursuant to R.C. 2743.02(F) and 9.86. Therefore, the courts of common pleas do not have jurisdiction over civil actions against Dr. Hoffman based upon the alleged actions and inactions in this case. Pursuant to Civ.R. 54(B), this court makes the express determination that there is no just reason for delay.

Judgment accordingly.

J. WARREN BETTIS, J., retired, of the Columbiana County Court of Common Pleas, sitting by assignment.